UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JESSICA JONES,

                 Plaintiff,        |    Civil No. 12-6212 (JEI/JS)

     v.

CITY OF VINELAND; DETECTIVE
GAMALIEL "GAMI" CRUZ; POLICE
CHIEF TIMOTHY CODISPOTI; JOHN
DOES 1-10; AND JANE DOES 1-10

               Defendants.      |    **OPINION**

**APPEARANCES:**

BEGELMAN, ORLOW & MELLETZ
By:  Paul R. Melletz, Esq.
411 Route 70 East, Suite 245
Cherry Hill, NJ 08034
     Attorney for Plaintiff

THE MACMAIN LAW GROUP, LLC
By:  Brian H. Leinhauser, Esq.
      Charles R. Starnes, Esq.
      David MacMain, Esq. (*Pro Hac Vice*)
101 Lindenwood Dr., Suite 160
Malvern, PA 19355
     Attorneys for Defendant Detective Gamaliel Cruz

BARRETT & PAVLUK LLC
By:  Judson B. Barrett, Esq.
1200 Eagle Avenue, Suite 204
Ocean, NJ 07712
     Attorney for Defendants City of Vineland and Police Chief
     Timothy Codispoti

**IRENAS,** Senior United States District Judge.

     Plaintiff Jessica Jones brought this civil rights action

against the City of Vineland, Vineland's Police Chief, and

individual police officers based on an allegedly malicious prosecution of Plaintiff.

Currently pending before the Court are two separate motions for summary judgment filed by Defendants Detective Gamaliel Cruz ("Defendant Cruz"), and the City of Vineland and Police Chief Codispoti ("Municipal Defendants"). In addition, Defendant Cruz has moved for sanctions under Rule 11 against Plaintiff and Plaintiff's counsel, Paul Melletz, Esq. of Begelman, Orlow & Melletz.

For the reasons explained herein, Defendants' motions for summary judgment will be **GRANTED**. The motion for sanctions will be **DENIED**.

## I. Facts

The Court recites those facts relevant to the pending motions.

In 2008, Plaintiff and her partner Richard Kates jointly purchased a residence at 442 Linwood Avenue in Vineland, New Jersey. (Def.'s Statement of Undisputed Facts ("D.S.F.") ¶¶ 3-4) In March 2009, the Vineland Police Department began investigating Kates for certain drug activities. (Search Warrant Aff., Ex. 4 to Def. Cruz's Motion) Over the course of their investigation of Kates, police observed at least one controlled purchase of crack cocaine at that residence while Plaintiff was at home. (D.S.F. ¶ 6)

On October 8, 2010, a group of police officers, including Defendant Cruz, executed a search warrant of the 442 Linwood Avenue address while Kates was present. (Cruz Rpt., Ex. 6 to Def. Cruz's Motion)  During the search of the master bedroom, Kates directed the officers to the locations where he had hidden drugs: a shoebox and brown handbag in the closet Kates stated that he and his girlfriend, Plaintiff, shared. (Kates Dep. at 8:20-9:10, Ex. 2 to Def. Cruz's Motion)  Inside the shoebox, officers found two bags of crack cocaine and a digital scale with residue, and inside the handbag, four hundred individual baggies of crack cocaine.  (Evidence Log, Ex. 9 to Def. Cruz's Motion)  Under the bed in the master bedroom police also found a lockbox containing almost $2,000 in cash. (Id.)  Plaintiff was not present during the search. (*See* Cruz Rpt.)  In her opposition brief, Plaintiff does not dispute that such items were present in her home. (Pl.'s Response to Defs.' Statement of Undisputed Material Fact ("P.R.S.F.") ¶¶ 14, 16, 21)

Later that day, police charged Plaintiff with possession of a controlled dangerous substance ("CDS") in violation of N.J.S.A. § 2C:35-10(a)(1), possession with intent to distribute between one-half ounce but less than five ounces of a CDS in violation of N.J.S.A. § 2C:35-5(b)(2), and possession with intent to distribute a CDS within 500 feet of a public park in violation of N.J.S.A. § 2C-35-7.1(a).  (Jones Complaint-Warrant,

Ex. 14 to Def. Cruz's Motion) At no point after the search did Kates admit to the police that the contraband belonged only to him and not to Plaintiff. (Kates Dep. at 27:17-23) On October 15, 2010, police obtained a warrant for Plaintiff's arrest and arrested her in her master bedroom. (Cruz Rpt.)

In 2011, based on Defendant Cruz's misconduct in an unrelated case, Plaintiff's criminal proceedings, along with proceedings pending against other defendants, were dismissed with prejudice. (*See* Compl. ¶ 17.)

Plaintiff filed the instant civil rights action on October 3, 2012, against Defendant Cruz, the City of Vineland, and Vineland's Police Chief. The Complaint includes counts for malicious prosecution of Plaintiff pursuant to § 1983 and New Jersey state law, conspiracy to violate civil rights, and *Monell* claims against Municipal Defendants. Plaintiff alleges that Defendant Cruz initiated criminal proceedings against her without probable cause, attempted to "intimidate [her] into giving information regarding other individuals whom Defendant Cruz intended to charge," and falsified evidence. (Id. at ¶¶ 1, 7, 18) Plaintiff also alleges that Defendant Codispoti turned a blind eye to the actions of Defendant Cruz thereby causing the deprivation of Plaintiff's civil rights. (Id. at ¶¶ 20-22) Defendants Cruz and the City of Vineland moved separately for summary judgment on January 9, 2015. Defendant Cruz also moved

for Rule 11 sanctions on that date for the second time.[1]

Plaintiff filed an opposition brief to Defendant Cruz's motions

on February 3, 2015.[2]  Defendant Cruz filed a reply brief on

February 17, 2015.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary

judgment should be granted if the "pleadings, depositions,

answers to interrogatories, and admissions on file, together

with affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to

judgment as a matter of law."  *See also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for

summary judgment, the court must construe all facts and

inferences in the light most favorable to the nonmoving party.

*See Boyle v. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

The moving party bears the burden of establishing that no

genuine issue of material fact remains. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986).  A fact is material only if it

will affect the outcome of a lawsuit under the applicable law,

and a dispute of a material fact is genuine if the evidence is

---

[1] The Court dismissed Defendant Cruz's first motion for sanctions without
prejudice on April 17, 2014, pending additional discovery.
[2] Plaintiff filed no brief opposing the summary judgment motion by Defendants
City of Vineland and Police Chief Codispoti.

such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "If the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Id.* at 249.

### III. Analysis

The Court will first address Defendants' motions for summary judgment on Plaintiff's claims before turning to the Rule 11 motion for sanctions.

#### A. Plaintiff's Claims

#### 1. Malicious Prosecution

Counts I and II of the Complaint allege malicious prosecution claims against Defendant Cruz under § 1983 and New Jersey State law. Plaintiff alleges that Defendant Cruz filed charges against Plaintiff without probable cause, falsified police reports, and fabricated evidence. Because Plaintiff has failed to bring forth any evidence to support these allegations,

the Court will grant Defendant Cruz's motions for summary judgment on the malicious prosecution claims.

The Third Circuit requires a plaintiff to prove the following in order to prevail in a § 1983 malicious prosecution action: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty. *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). The standard for malicious prosecution under New Jersey state law mirrors this test, excepting the fifth element. *See Lind v. Schmid*, 67 N.J. 255, 262 (1975). "The essence of a cause of action [for malicious prosecution] is lack of probable cause." *Id.* Here, Plaintiff has not provided sufficient evidence for a reasonable jury to find that Defendant Cruz lacked probable cause to initiate criminal proceedings against Plaintiff.

Probable cause exists when the objective facts and circumstances known to the police at the time are such that a reasonable person would believe that the person to be charged has committed an offense. *Orsatti v. N.J. State Police*, 71 F.3d

7

480, 483 (3d Cir. 1995).[3]  The probable cause analysis involves a factual, common sense inquiry of the totality of the circumstances, historical facts, events leading up to the individual's arrest, and resultant probabilities.  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see also Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *United States v. Glasser*, 750 F.2d 1197, 1205-06 (3d Cir. 1984).  To decide what was reasonable, courts must weigh the inculpatory evidence against the exculpatory evidence known to officer at the time.  *Wilson v. Russo*, 212 F.3d 781, 791 (3d Cir. 2000).  In the context of a malicious prosecution claim, courts must examine each offense charged for probable cause.  *See Johnson v. Knorr,* 477 F.3d 75, 85 (3d Cir. 2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges is justified.").

Malicious prosecution is an avowedly disfavored cause of action, and the burden on plaintiffs to retroactively prove lack of probable cause is difficult to meet.  *Land v. Helmer*, 843 F. Supp. 2d 547, 550 (D.N.J. 2012).  Since Defendant Cruz had reason to believe Plaintiff had committed each offense with

---

[3] "[T]he standard for probable cause is identical under federal and New Jersey law." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013) (citing *Schirmer v. Penkethman*, Civ. No. 10-1444, 2012 WL 6738757, at *8 (D.N.J. Dec. 31, 2012)).

which he charged Plaintiff, the Court will grant Defendant
Cruz's motion for summary judgment on the malicious prosecution
claims.  The Court addresses each charge in turn.

### a. Possession of a Controlled Dangerous Substance

Plaintiff was first charged with possession of crack
cocaine in violation of N.J.S.A. § 2C:35-10(a)(1).  The statue
provides, in relevant part: "[i]t is unlawful for any person . .
. to possess, actually or constructively, a controlled dangerous
substance."  N.J.S.A. § 2C:35-10(a)(1).  Even if a person does
not have actual physical control over an object, he may be in
constructive possession of that object if the "circumstances
permit a reasonable inference that he has knowledge of its
presence, and intends and has the capacity to exercise physical
control or dominion over it during a span of time."  *State v.
Spivey*, 179 N.J. 229, 237 (2004).  The Supreme Court has opined
that an officer's reasonable inference of constructive
possession suffices for probable cause to charge an individual
with the crime of possession.  *Pringle*, 540 U.S. at 372.  In
*Pringle*, the Court found that where three men in a car had
access to five baggies of cocaine and none of the men, when
questioned, claimed ownership, the officer made a reasonable
inference that "any or all three of the occupants had knowledge
of, and exercised dominion and control over, the cocaine."  *Id.*
Presence in a relatively small automobile, the Court said, rose

to the level of constructive possession rather than mere
proximity to criminal activity.  *Id.* at 373.

Plaintiff argues that mere location cannot be enough to
establish probable cause when the officer is "fully aware that
no additional evidence will be produced to demonstrate
constructive possession." (Pl.'s Opp. at 10)  In support of
this proposition, Plaintiff relies on a series of analogies to
several New Jersey state court cases in which the Appellate
Division overturned possession convictions on the theory of
constructive possession where the only evidence produced at
trial was the defendants' proximity to contraband.[4]  However, the
court in those cases found the evidence insufficient to support
criminal *convictions*, rather than the constitutionality of the
defendants' *prosecutions*, under a theory of constructive
possession.  Plaintiff nonetheless contends that "[a]ppellate
level case law in New Jersey has clearly declined to accept" the
theory of constructive possession based solely on the location
of contraband.  (Id. at 9)

The Court finds Plaintiff's argument unpersuasive.  First,
the probable cause standard is clearly different from the beyond
a reasonable doubt standard required to sustain a conviction.
*See State v. Basil*, 202 N.J. 570, 585 (2010) ("Although probable

---

[4] Plaintiff cites *State v. Whyte*, 265 N.J. Super. 518 (App. Div. 1992); *State
v. Milton*, 255 N.J. Super. 514 (App. Div. 1992); and *State v. Shipp*, 216 N.J.
Super. 662 (App. Div. 1987).

cause is more than a mere suspicion of guilt, it is *less* than the evidence necessary to convict.") (emphasis added). Further, the case law is clear that, where an individual co-owns a residence, the location of contraband in common areas of the residence can suffice for a finding of probable cause for a possession charge based on a theory of constructive possession. *Ginter v. Skahill*, 298 Fed. App'x 161, 164-65 (3d Cir. 2008). In *Ginter*, the court held that a reasonable police officer would have concluded that the plaintiff was in constructive possession of drug paraphernalia found in her home's family room, "a common area of the residence she co-owned and lived in with her husband." *Id.* at 164. Affirming the district court's grant of summary judgment to the defendant officer on the plaintiff's malicious prosecution claim, the court noted that the plaintiff had failed to come forth with any affirmative evidence making it unreasonable for police to have believed that she was in constructive possession of contraband. *Id.* at 165; *see also Williams v. Atl. City Dep't of Police*, No. 08-4900, 2010 WL 2265215, at *1 (D.N.J. June 2, 2010) (finding that because plaintiff had a romantic relationship with a woman suspected of selling drugs from a particular apartment, police had probable cause to arrest him for possession when they found him hiding in the same room as contraband during a search of that apartment).

Here, no reasonable jury could find that Defendant Cruz lacked probable cause to bring the possession charge because he had reason to believe that Plaintiff constructively possessed cocaine at the time he brought charges against her.  During the search of Kates and Plaintiff's shared residence, Kates pointed police toward the location of contraband in a shoebox and handbag[5] in the master bedroom closet (clearly a common area of the home) and indicated that he shared that closet with Plaintiff.  Police had observed previous drug activity at that address and knew that Plaintiff had been present for that activity on at least one occasion.  Further, Kates never claimed complete ownership over the drugs and paraphernalia when first questioned by police.  These facts all support Cruz's reasonable inference that both Kates and Plaintiff knew about and could exercise control over the crack cocaine.

Plaintiff argues the theory of constructive possession was insufficient for a finding of probable cause because police found no new evidence to link Plaintiff to the contraband in the week between the search and obtaining a warrant for her arrest.

---

[5] The parties spend a great deal of time in their papers and depositions discussing a number of disputes relating to this handbag, including the effect of reporting the incorrect brand of the bag and whether Plaintiff ever actually used it.  These disputes are immaterial to the probable cause inquiry.  The only relevant question is what was reasonable for Defendant Cruz to believe at the time he initiated charges against Plaintiff.  Nothing Defendant Cruz knew at that time would have made it unreasonable for him to believe that any handbag, regardless of its brand, located in their shared bedroom closet, belonged to either Plaintiff or Kates.

(Pl.'s Opp. at 10)   While there is no explanation for this gap
in time in the record, Defendant Cruz's lack of further
investigation does not negate his probable cause determination
based on the items found during the search and Kates's
admissions.   Police officers need not validate initially proper
probable cause determinations.   *Merkle v. Upper Dublin Sch.
Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000); *see also Craig v.
Cohen*, No. 13-1873, 2013 WL 5271521, at *24 (D.N.J. Sept. 17,
2013) (finding that a police officer has "no general duty to
investigate further after acquiring information sufficient to
establish probable cause") (quoting *BeVier v. Hucal*, 806 F.2d
123, 127 n.1 (7th Cir. 1986)).   There is simply no dispute that
police searched the 442 Linwood Avenue home based on an ongoing
investigation of drug activity linked to that house and found
400 plastic baggies of crack cocaine in the bedroom closet
shared by Kates and Plaintiff.   No information known to police
at the time would have made it unreasonable to believe the
contraband belonged to the *either* individual who used the
bedroom closet.   These objective facts known to Defendant Cruz
at the time supported his reasonable belief that Plaintiff had
committed the offense of possession.

### b. Possession of CDS with Intent to Distribute

Defendant Cruz also had probable cause to charge Plaintiff
with possession with intent to distribute between one-half ounce

but less than five ounces of a CDS in violation of N.J.S.A. §
2C:35-5(b)(2).  For the reasons articulated above, Defendant
Cruz had probable cause to believe that Plaintiff was in
constructive possession of the contraband found in her shared
bedroom closet.  The question here is whether Defendant Cruz
also had reason to believe Plaintiff intended to distribute the
crack cocaine present in her home.

Evidence of intent to distribute typically includes the
quantities and packaging of CDS and cash, and the existence of
drug paraphernalia.  *See United States v. Robinson*, No. 09-473,
2012 WL 1671325, *20 (E.D. Pa., May 14, 2012) (surveying the
sufficiency of evidence in the Third Circuit for a finding of
intent to distribute).  Here, any reasonable juror would find
the packaging of crack cocaine in 400 individual baggies gave
Defendant Cruz clear probable cause to initiate criminal
proceedings against Plaintiff for possession with intent to
distribute.  Police also found a scale with residue and a large
quantity of cash nearby, which gave Defendant Cruz further
evidence that Plaintiff and Kates were selling narcotics.
Plaintiff points to nothing Defendant Cruz knew at the time that
would have made it unreasonable to reach such a conclusion.
Defendant Cruz thus had probable cause to believe Plaintiff
violated N.J.S.A. § 2C:35-5(b)(2).

### c.  Possession of CDS Near Public Park

Finally, Plaintiff was charged with possession with intent to distribute a CDS within 500 feet of a public park in violation of N.J.S.A. § 2c:35-7.1(a).  For the reasons already described, Defendant Cruz had probable cause to believe that Plaintiff had committed the underlying offense of possession with intent to distribute a CDS.  Police discovered the evidence of this crime at the 442 Linwood Avenue home jointly owned by Plaintiff and Kates, and neither party disputes the location of the home in proximity to Romano Park. (*See* Jones Complaint-Warrant (Ex. 14).)  Thus, the undisputed facts demonstrate that Defendant Cruz had probable cause to charge Plaintiff with possession with intent to distribute near a public park.

### 2. Civil Rights Conspiracy

To prove a civil rights conspiracy claim, Plaintiff must show that she suffered an actual deprivation of her constitutional rights. *See Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."); *Fioriglio v. City of Atl. City*, 996 F. Supp. 379, 385 (D.N.J. 1998) ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983.").  Here, Plaintiff's conspiracy claim relies on her

underlying malicious prosecution claim.  Since the Court holds
that Plaintiff cannot prove her malicious prosecution claim, the
conspiracy claim in Count III must fail as well.

### 3.   Municipal Liability

In Counts IV and V, Plaintiff asserts § 1983 supervisory
and municipal liability claims against Police Chief Timothy
Codispoti and the City of Vineland for policies or customs
responsible for the malicious prosecution Plaintiff alleges she
suffered. (Compl. ¶¶ 47, 50)  The Court will grant summary
judgment to Municipal Defendants on both counts.

First, the Court notes that Plaintiff brings her claims
against Defendant Codispoti in Codispoti's official capacity
only. (Id. at ¶¶ 7, 10)  The Supreme Court has opined that
official capacity claims, as opposed to claims brought against
officials in their individual capacity, "generally represent
only another way of pleading an action against an entity of
which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25
(1991).  Courts should therefore treat suits against state
officials in their official capacity "as suits against the
State." *Id.*  "A suit against the Chief of Police in his
official capacity is really a claim against the police
department and, in turn, the municipality." *Cordial v. Atl.
City*, No. 11-01457, 2014 WL 1095584, at *9 (D.N.J. March 19,

2014).  The claims against Defendant Codispoti are therefore redundant and will be dismissed.

A municipality may be liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To succeed on a municipal liability claim, however, a plaintiff must have suffered some underlying violation of his constitutional rights for which the municipality is to blame.  *See Mulholland v. Gov't Cnty of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).  Since no reasonable jury could find an underlying constitutional violation, i.e. malicious prosecution, Plaintiff's municipal liability claims must be dismissed.

### B. Rule 11 Sanctions

The Court will deny Defendant Cruz's motion for sanctions against Plaintiff and Plaintiff's counsel, Paul Melletz, Esq.

Rule 11 states in relevant part:

(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it— an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief,

formed   after   an   inquiry   reasonable   under   the
circumstances:
(1) it is not being presented for any improper purpose,
such   as   to   harass,   cause   unnecessary   delay,   or
needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions
are warranted by existing law or by a nonfrivolous
argument for extending, modifying, or reversing existing
law or for establishing new law;
(3) the factual contentions have evidentiary support or,
if   specifically   so   identified,   will   likely   have
evidentiary support after a reasonable opportunity for
further investigation for discovery; and
(4) the denials of factual contentions are warranted on
the   evidence   or,   if   specifically   so   identified,   are
reasonably based on belief or lack of information.

Fed.R.Civ.P. 11.  If a party or its counsel violates this

provision, the opposing party may move for the imposition of

sanctions, which may include an order directing payment to the

movant of "part or all of the reasonable attorney's fees and

other expenses directly resulting from the violation."

Fed.R.Civ.P. 11(c).

The goal of Rule 11 is the "correction of litigation

abuse." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.

1987).  "[S]anctions awarding counsel fees do not automatically

or usually follow an adverse judgment or ruling. Substantially

more is required." *Id.*  Generally, sanctions are warranted

"only in the 'exceptional circumstance' where a claim or motion

is patently unmeritorious or frivolous." *Ford Motor Co. v.

Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)

(citing *Doering v. Union Cnty. Bd. Of Chosen Freeholders,* 857

F.2d 191, 194 (3d Cir. 1988).  As indicated by the Rule, a court must look to whether an attorney's or party's representations to the court were objectively reasonable under the circumstances. *Bus. Guides v. Chromatic Commc'ns Enters.,* 498 U.S. 533, 551 (1991).  "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.,* 889 F.2d 490, 496 (3d Cir. 1989).  "When the attorney reasonably relies upon the misrepresentations of a client, the client not the attorney should be sanctioned under Rule 11." *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.,* No. 97-7430, 1999 WL 675469, at *4 (E.D. Pa. Aug. 31, 1999).  "Counsel is permitted to assume his client is honest with him unless and until circumstantial evidence is obviously to the contrary." *Id.* at *6.

### 1. Sanctions Against Plaintiff

In her Complaint, Plaintiff alleges that certain police officers, including Defendant Cruz, "conspired to plant drugs on Plaintiff" and charged Plaintiff based on other "deliberately fabricated evidence." (Compl. ¶¶ 10, 42)  The record directly contradicts these allegations of false evidence and reporting. At the time of the search warrant, Kates directed police to the drugs hidden in his bedroom closet.  (Kates Dep. at 8: 20-24)

Kates admitted in his deposition that the drugs found were in fact his. (Id. at 8:25-9:24)  Finally, Plaintiff herself no longer disputes that drugs were *found* in her home rather than *planted*.  (Jones Dep. at 27:7-17, 30:13-18, 33:14-17)  It logically follows that at some point prior to her deposition on January 14, 2014, Plaintiff must have had actual knowledge that the factual allegations in her Complaint regarding planted evidence were false.

However, the exact date of such knowledge is unclear from the record.  During police questioning immediately following her arrest, Plaintiff admitted twice that she believed that "the drugs" belonged to Kates.  (Jones Interview Video at 11:38:20/4:24; 11:49:30/15:34, Ex. 5 to Def. Cruz's Motion) However, she denied knowledge that Kates sold narcotics out of the home and the police never specified in their questioning the amount of drugs found or the way those drugs were packaged.  For these reasons, it is not clear whether Plaintiff knew exactly what the officers had found when searching her home until Kates later admitted to the contraband.

Since filing her Complaint, Plaintiff has made no additional representations to the Court regarding false or planted evidence.[6]  Further, the undisputed evidence in the

---

[6] Defendant Cruz points to Plaintiff's Opposition to Defendant Cruz's earlier motion for sanctions, but the Court finds that Plaintiff made no such misrepresentations in that submission.  Plaintiff merely argues that "[i]n

record does not show that Plaintiff had actual knowledge that
the drugs in question belonged to Kates prior to filing her
Complaint on October 3, 2012, and the Court declines to make
such a finding.  As the Court cannot definitively conclude that
Plaintiff made false representations to the Court, Defendant
Cruz's motion for sanctions against Plaintiff will be denied.

### 2. Sanctions Against Plaintiff's Counsel

Defendant Cruz argues that Plaintiff's counsel had reason
to know prior to the date of filing the Complaint that the
malicious prosecution claims were "factually false and legally
meritless." (Def. Cruz's Motion at 23)  Defendant Cruz contends
that Plaintiff's counsel had ample evidence that the drugs were
not planted as Plaintiff alleged in her Complaint, and that the
constructive possession argument in Plaintiff's opposition brief
runs contrary to well-settled law and was therefore not made in
good faith. (*Id.* at 20.)

The Court disagrees with Defendant Cruz's contention that
Plaintiff's counsel knew that the malicious prosecution claims
were factually false.  Plaintiff's counsel stipulates that at
the time of filing Plaintiff's Complaint, he was unaware that
the drugs found at 442 Linwood Avenue, in that volume and as
packaged, belonged to Mr. Kates.  (Certification of Melletz,

---

this case, although the drugs were found in Plaintiff's home . . . the
presumption that the Plaintiff knew of their existence remains unsupported."
(Pl.'s Opp. to Def.'s Motion for Sanctions, April 4, 2014, ECF No. 23)

Feb. 3, 2015, ¶ 16)  While it is a close case, the record does not indicate that Plaintiff's counsel had sufficient reason to doubt his client's honesty at the time he filed this case. Concededly, Plaintiff's counsel must have known the truth of the drugs' ownership after the completion of discovery.  However, Plaintiff's briefs after the depositions of Kates and Plaintiff do not rely on these unsupported factual contentions to make any legal arguments.

Neither will the Court sanction Mr. Melletz for his argument related to the probable cause standard for constructive possession.  Again, this is a close case.  Mr. Melletz seems to contend that the beyond a reasonable doubt standard to convict should also apply to the probable cause inquiry.  In addition, he ignores prior case law affirming probable cause in factually analogous scenarios.  However, "substantially more is required" for the court to find that this unsuccessful argument rises to the level of litigation abuse.  *See Gaiardo*, 835 F.2d at 483; *see also Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, Civ. No. 3:08-1999, 2008 WL 5416396, at *32 (D.N.J. Dec. 22, 2008) (declining to impose sanctions despite the failure of an argument to extend well-settled law under limited circumstances).  The Court will therefore deny Defendant Cruz's motion for sanctions as it applies to Mr. Melletz.

## IV. Conclusion

For the reasons set forth above, the Court will **GRANT** Defendants' motions for summary judgment. Defendant Cruz's motion for Rule 11 sanctions will be **DENIED**.  An appropriate Order accompanies this Opinion.


Date: July 22, 2015


                              s/ Joseph E. Irenas
                         **JOSEPH E. IRENAS, S.U.S.D.J.**